IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LIBORIO LOPEZ and CHRISTINA LOPEZ,
individually and as parents and next friends of
Mariah Lopez, a minor,

        Plaintiffs,

  vs.                               No. CIV 01-951 WWD/LFG

UNITED STATES OF AMERICA,

        Defendant.


### FINDINGS OF FACT AND
### RECOMMENDED DISPOSITION[1]

      THIS MATTER is before the Court on an application for approval of a settlement between

Plaintiffs Liborio Lopez and Christina Lopez and Defendant United States of America. Court

approval is necessary because of the presence of Mariah Lopez, who is a minor.[2] Having heard the

presentations of counsel, along with the testimony of the parents Liborio Lopez and Christina Lopez,

and having considered the report and recommendation of the Court's guardian ad litem presented at

a hearing on August 1, 2002, the Court finds:

---

[1]Parties were advised of their right to file objections to this report and recommendation within ten days, pursuant to 28 U.S.C. § 636(b)(1). However, in order to expedite the approval of this settlement, counsel agreed at an August 1, 2002 hearing that they had no objections to the Court's proposed findings and recommended disposition.

[2]The general rule is that the court must give approval to a settlement when minor children are involved. The court "has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court itself." Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by* Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

### Findings

1. On August 21, 2001,Liborio and Christina Lopez, on their own behalf and as next friends of their child, Mariah Lopez ("Mariah"), filed a Complaint for Medical Negligence and Loss of Consortium against Defendant United States.[3] A First Amended Complaint was filed on October 3, 2001. Plaintiffs claim that because of the negligence of Defendant's employees, their daughter Mariah's bacterial meningitis was not timely diagnosed or treated, and as a result she suffered permanent brain damage that left her unable to care for herself. [First Amended Complaint].

2. The medical treatment giving rise to this lawsuit occurred on September 29, 1999, when Mariah, who was six weeks old, was taken by her parents to the Santa Fe Indian Hospital with symptoms of agitation, hysterical inconsolable crying, and refusal to nurse. The Santa Fe Indian Hospital is owned and operated by the Defendant United States and is located in Santa Fe, New Mexico. Plaintiffs claim that Defendant's employee Dr. Anne Kuzava was negligent in failing to perform any laboratory tests on Mariah, misdiagnosing her condition as colic when in fact she was suffering from bacterial meningitis, initially refusing to admit her to the hospital and then sending her home prematurely without any treatment, with the result that she suffered permanent brain damage.

3. The settlement at issue pertains to Plaintiff's allegations against Dr. Kuzava, who was at the time of the incidents at issue herein acting in the scope and course of her employment with the Santa Fe Indian Hospital and the United States of America.

4. Mariah Lopez's injuries allegedly consist of permanent brain damage resulting in microencephaly, mental retardation and developmental disabilities, as a result of the treatment she

---

[3]Santa Fe Indian Hospital was also named as a defendant in the original complaint. However, the United States is the sole proper defendant in cases brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et. seq.*

received at Santa Fe Indian Hospital on September 29-30, 1999. [First Amended Complaint]. She has allegedly incurred and will continue to incur medical expenses in the future, has suffered loss of enjoyment of life, will suffer a loss of earnings and other benefits and has endured and will continue to endure pain, suffering and emotional distress. [Id.].

5. The parties engaged in mediation, and Plaintiffs were able to reach a settlement with Defendant United States, subject to the Court's approval. The terms of that settlement include a total payment of $3 million, part of which is to be placed in a structured settlement, as described below.

6. Woody Smith was appointed guardian ad litem as an "arm of the court" for Mariah and was present, telephonically, at the August 1 hearing to approve settlement.

7. Mr. Smith conducted extensive and in-depth work on this case, including a review of the pleadings, records related to Mariah's future care needs, the affidavit of Plaintiff's expert on liability, the expert economist's reports, and reports from both parties' life care planners. He also reviewed the proposed trust agreement, the annuity proposal and the settlement agreement. He met Mariah at the mediation conducted in this case.

8. On August 1, 2002, the Court held a hearing on the parties' application for approval of the settlement. Counsel for Plaintiffs and Defendant attended the hearing, and Mr. Smith appeared telephonically. Liborio and Christina Lopez were also present.

9. The specific terms of the settlement are as follows:

(a) The present value of the proposed settlement is $3,000,000. Of this amount, $1,165,000 will be paid in cash and the balance of $1,835,000 will be used to seed the reversionary trust and purchase an annuity that will be paid to a special needs reversionary trust that, over the course of Mariah's life expectancy, may pay as much as $20,439,392.17 for Mariah's needs.

(b) The settlement amount will fund a reversionary trust. Under the parties' agreement, $173,084 will be placed into the trust as "seed money." The remainder of the $1,185,000, or $1,661,916, will be used to purchase an annuity which will pay into the reversionary trust, starting two years from the date of the annuity's purchase, $7,500 per month, increasing at 2.83% compounded annually, for a period of 17 years certain. Beginning in 19 years, the sum paid into the reversionary trust will be increased to $10,008.35 per month, increasing at 2.83% compounded annually, and will be paid for the remainder of Mariah's life. The special needs reversionary trust is for Mariah's benefit only, and in accord with the terms of the trust instrument, funds may be drawn out to be used for Mariah's needs as contemplated by the trust agreement. At the time of Mariah's death, any money remaining in the trust after all outstanding expenses are paid will revert back to the United States government.

(c) Of the cash proceeds of $1,165,000, paid "up front," $61,858.90 will be held by Plaintiff's counsel in a trust account for the subrogation claims of the medical providers. Plaintiff's counsel will attempt to negotiate reductions in the amounts billed, and will utilize the amount retained for health care provider subrogated claims. Any balance remaining in that account after satisfaction of all subrogated claims shall be paid to the separate, non-reversionary trust as hereafter described. Plaintiff is responsible for satisfying all health care provider claims. (d) Liborio Lopez and Christina Lopez will each receive $50,000 for their loss of consortium claims, to be paid out of the cash proceeds of $1,165,000. As this portion of the settlement is not for Mariah's benefit, but rather to discharge the personal claims of Liborio and Christina Lopez, there are no restrictions on the use of this portion of the settlement proceeds.

(e) Plaintiff's counsel has agreed to accept an attorney's fee of 23.35% of the total settlement,

or $700,000, plus gross receipts tax of $40,687.50, and costs of $9,065.53.

(f) After the disbursement of the proceeds into the structured settlement, attorney's fees, costs, and the amount held in trust for subrogation and loss of consortium claims, the total amount remaining will be $253,388.07. This amount will be placed into a separate, non-reversionary trust, with attorney Charles Reynolds acting as trustee. From this trust, the government has allocated funds for a vehicle and a house, modified to accommodate Mariah's disabilities.[4]

10. Plaintiffs' counsel explained to Liborio and Christina Lopez that all settlement funds, with the exception of the damages allocated to Liborio and Christina Lopez for their loss of consortium, are for the purpose and benefit of their daughter, Mariah Lopez, in accordance with Leyba v. Whitley, 118 N.M. 435, 882 P.2d 26 (Ct. App. 1994), *reversed on other grounds,* 120 N.M. 768, 907 P.2d 172 (1995).

11. Woody Smith, the guardian ad litem, reported that the amounts of the settlement are appropriate to the claims and defenses, that the settlement is fair and reasonable and in the best interests of Mariah, and he recommended that the settlement go forward. He also stated that he discussed with Plaintiffs their obligations under Leyba, as noted above.

12. Mr. Smith performed his services as guardian ad litem on a *pro bono* basis. However, the Court authorized a fee for his services and directed that it be taken from the smaller of the two trusts being set up for Mariah's benefit. Mr. Smith will apply for and receive fees from this trust,

---

[4]Thus, the $3,000,000 is accounted for as follows: (1) $1,165,000 paid in cash, out of which $61,858.90 is held in the trust account of Plaintiff's counsel to negotiate subrogation payments to medical advisors ; $50,000 is to be paid to Liborio Lopez for loss of consortium; $50,000 is to be paid to Christina Lopez for loss of consortium; attorney fees to Plaintiff's counsel in the amount of $700,000, plus $40,687.50 in gross receipts tax, plus $9,065.53 in costs; thus leaving $253,388.07, which will be placed into a separate, non-reversionary trust; (2) $1,835,000, of which $173,084 is to be used as seed money for the reversionary trust; and $1,661,916 is to be used to purchase an annuity from which payments will be made into the reversionary trust, as described above.

based on his standard hourly rate, once the trust is established.

13. The Court discharged Mr. Smith from his duties as guardian ad litem.

14. Liborio and Christina Lopez each testified that they understood they had no obligation to settle the case and could elect to go to trial if they so chose. No one forced, coerced, or pressured them to settle, and they understood that trial might result in higher damages than those for which they were settling but might also result in a defense verdict. They are satisfied with the services provided them by their attorneys. They believe the settlement is fair, and they asked the Court to approve it.

15. Liborio and Christina Lopez were not under the influence of any medication, alcohol or drugs, either at the mediation process or at the hearing. They understood that the proceeds of the settlement, aside from their own loss of consortium damages, are intended for the benefit of Mariah. The Lopezes understood that Mariah's condition could grow worse and she could die from complications growing out of the claimed malpractice, and that if they agreed to the settlement, the terms of the settlement were final as to the claims raised in this lawsuit, and that there would be no opportunity to reopen this litigation to seek more money, or to file new claims against the United States.

16. Liborio and Christina Lopez understood that the settlement is contingent on both the trial judge's acceptance of the Magistrate Judge's recommendation to approve the settlement, and approval by the Department of Justice ("DOJ") in Washington, D.C. The Lopezes understood that if the trial judge or the DOJ declines to approve the settlement, then the agreement will be ineffective and the case will proceed to trial. Counsel for the United States represented that he does not anticipate any problems or delays in securing DOJ approval.

## **Conclusion of Law**

After consideration of the evidence, the presentations of counsel, and the guardian ad litem's report and recommendation, the undersigned Magistrate Judge concludes that the Court has jurisdiction over the parties and subject matter, and further concludes that this settlement is in Mariah Lopez's best interests.  Therefore, the Court recommends that the settlement be approved, contingent upon final approval by the Department of Justice, and that the case be dismissed with prejudice, once that approval has been secured.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge